IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RODGER DAY, on behalf of himself and all others similarly situated,**<br><br>　　　　　　**Plaintiff,**<br>　v.<br><br>**NUCO2 MANAGEMENT, LLC**<br><br>　　　　　　**Defendant.** | No. 1:18-cv-02088<br><br>Judge Ellis<br><br>Magistrate Judge Finnegan |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT,
SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

**I.　INTRODUCTION**

Following careful investigation, informal discovery, and arm's-length negotiations, Plaintiff Rodger Day ("Plaintiff"), on behalf of himself and others similarly situated ("Plaintiffs"), and Defendant NuCO2 Management, LLC ("Defendant"), have agreed subject to Court approval, to resolve the collective action overtime claims now asserted in this lawsuit under the Fair Labor Standards Act ("FLSA"). The settlement merits approval because it resolves a bona-fide dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law, with the help of a respected neutral mediator. The $900,000 settlement provides direct payments to Plaintiff and Defendant's other Salaried Flex Installers and Salaried Install Supervisors ("Eligible Settlement Class Members") without any claims submission process that could depress participation in the settlement. The $900,000 Gross Settlement Amount represent the recovery of approximately 74% of owed overtime wages that Eligible Settlement Class Members could obtain if they won this lawsuit on the merits. Because

of this excellent result, the Court should approve this settlement, including Plaintiff's request for a $7,000 service award and Plaintiffs' Counsel's request for one-third of the settlement fund as attorneys' fees plus litigation costs, and enter the Proposed Order submitted to the Court's proposed order email address.

## II.     Factual Allegations

Plaintiff is a former employee of Defendant who, among other things, worked as a Salaried Flex Installer and Salaried Install Supervisor. Compl. ¶ 2. Plaintiff alleges that Defendant violated the FLSA by misclassifying him and other Salaried Flex Installers and Salaried Install Supervisors as exempt from federal overtime requirements and failing to pay them overtime wages. *Id* ¶¶ 5-10. Defendant denies that it violated any law, including the FLSA, regarding payment of overtime wages or hours worked and vigorously disputes the claims asserted in this lawsuit. Ex. 1, Joint Stipulation and Release Agreement ("Agreement"), § 10.1.

## III.    Overview of Investigation, Settlement Negotiations, and Litigation

Before initiating this lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Ex. 2, Werman Decl., ¶ 11. Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of Plaintiff's and potential collective action members' overtime claims, the damages they could recover if they prevailed on their claims, and the propriety of a collective action proceeding. Ex. 2, Werman Decl., ¶ 11. As part of this process, Plaintiffs' Counsel obtained and analyzed documents from Plaintiff regarding his employment, including Defendant's employee handbook and Plaintiff's time and pay records. Ex. 2, Werman Decl., ¶ 11. Plaintiff's Counsel also conducted in-depth interviews of Plaintiff. Ex. 2, Werman Decl., ¶ 11.

In a letter dated September 1, 2017, Plaintiffs' Counsel informed Defendant of Plaintiff's allegations that he and other Salaried Install Supervisors and Salaried Flex Installers were misclassified as exempt from federal overtime laws and of their intent to initiate litigation if a pre-litigation settlement could not be reached. Ex. 1, Agreement, Recitals at unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 12. On October 12, 2017, the Parties entered into a tolling agreement to stop the statute from running on the potential claims while the Parties explored the potential for resolution, including through private mediation. *Id.* at unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 13. On January 2, 2018, Defendant produced to Plaintiffs' Counsel time and pay records for Plaintiff and the other Salaried Install Supervisors and Flex Installers. *Id.* at unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 13. Plaintiffs' Counsel used these records to calculate the potential owed overtime wages for Plaintiff and the potential collective action members. Ex. 2, Werman Decl., ¶ 13. The Parties then exchanged position statements detailing the factual bases for their respective claims and defenses. Ex. 2, Werman Decl., ¶ 13. On March 16, 2018, the Parties participated in a mediation with the assistance of respected mediator Michael J. Leach. Ex. 1, Agreement, Recitals at unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 13. At the mediation, the Parties reached a settlement of the potential claims. *Id.* at Recitals, unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 13. To obtain Court approval of the settlement, as required by the FLSA, Plaintiff filed his Complaint with the Court on March 22, 2018. *Id.* at Recitals, unnumbered ¶ __; Ex. 2, Werman Decl., ¶ 13.

IV.     **Overview of the Settlement[1]**

    A.     **The Settlement Fund**

The Agreement establishes a Gross Settlement Fund of $900,000.00. Ex. 1, §§ 1.8, 2.1. The Gross Settlement Fund covers payments to Eligible Settlement Class Members, any Court-approved Service Award to Plaintiff, any Court-approved attorneys' fees and costs, and the Settlement Administrator's fees and costs. *Id.* Defendant will pay Employer Payroll Taxes from outside the Gross Settlement Fund. *Id.*

    B.     **Eligible Settlement Class Members and Distribution of Settlement Checks and Settlement Notices**

Eligible Settlement Class Members are Plaintiff and all persons employed by Defendant as Salaried Flex Installers and Salaried Install Supervisors between September 1, 2014 and March 16, 2018, and who are identified in the payroll data produced by Defendant to Plaintiffs' Counsel on January 2, 2018. Ex. 1, Agreement, § 1.6. Exhibit C is a list of the employee ID numbers of the149 Eligible Settlement Class Members.

The Settlement Administrator will mail Settlement Checks to all Eligible Settlement Class Members within thirty days of the Effective Date, which is the later of the date that the Court enters an order approving the Settlement in substantially the form presented by the Parties, provided there are no objections, or the next day after any objections are resolved in favor of approval (including through any appeals). Ex. 1, Agreement, §§ 1.5, 2.4(C). Eligible Settlement Class Members are not required to do anything – such as submit a claim form – to receive a Settlement Check. *Id.*

---

[1] Capitalized terms are defined in the Agreement (*see* Exhibit 1) and carry those same definitions here.

With the Settlement Checks, the Settlement Administrator will mail Settlement Notices to Eligible Settlement Class Members. *Id.* at § 2.4(C). The proposed Settlement Notice will inform Eligible Settlement Class Members of the general terms of the settlement, their individual settlement allocations, tax treatment of the settlement payment, and the scope of the release. *See* Ex. 1, Agreement (Ex. B, Settlement Notice).

### C. Limited Overtime Release for Plaintiff and Participating Settlement Class Members

Eligible Settlement Class Members who participate in the Settlement by signing and cashing their Settlement Check ("Participating Settlement Class Members") will consent to join this collective action and agree to release their overtime claims:

> By signing and cashing this check: (1) I agree to join the case *Day v. NuCO2 Management, LLC*, No. 1:18-cv-0288, in the U.S. District Court for the Northern District of Illinois, and agree to be bound by the Agreement to settle the case; and (2) I agree to release any overtime claim I have or may have from September 1, 2014 to March 16, 2018 against NuCO2 Management, LLC, and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, as asserted in this case or that could have been so asserted in this case under the Fair Labor Standards Act or state wage and hour law, based on the allegations in the Complaint, that accrued while I worked for NuCO2 Management, LLC as a Salaried Flex Installer or Salaried Install Supervisor. This includes claims for liquidated damages and attorneys' fees and costs.

Ex. 1, Agreement, §§ 4.1, 11.11. The above language will be included on the back of Settlement Checks and in Settlement Notices mailed to Eligible Settlement Class Members with their Settlement Checks. Eligible Settlement Class Members who do not timely sign and cash a Settlement Check will not be bound by any release of claims. *Id.* at § 4.2. Plaintiff is also only providing Defendant a limited release of overtime claims, and not a general release. *Id.* at § 4.3.

### D. Calculation of Individual Settlement Payments, Tax Treatment, and Unclaimed Settlement Funds

Plaintiffs' Counsel calculated individualized overtime settlement payments for each Eligible Settlement Class Member from the time and payroll records Defendant produced to

5

Plaintiff's Counsel. Ex. 1, Agreement, § 2.4(D). For each Eligible Settlement Class Member, Plaintiff's Counsel used the following formula for each pay period:

(1) Total weekly hours equal the sum of daily hours punched each work week per Defendant's time data;

(2) Overtime hours equals total weekly hours minus forty (40);

(3) Weekly salary equals annual salary divided by 52;

(4) Regular rate equals weekly salary divided by the total hours worked each week; and

(5) Owed overtime wages equal overtime hours multiplied by the regular rate multiplied by 0.5.

*Id.* The total owed overtime wages are then divided pro rata among Eligible Settlement Class Members from the Net Settlement Fund. *Id.* at § 2.4(E).

For tax purposes, 50% of the payment to each Participating Class Member shall be treated as back wages, subject to employee payroll taxes and withholdings, and 50% will be treated as liquidated damages, not subject to payroll taxes and withholdings. *Id.* at § 2.4(F).

Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Class Members who do not timely sign and cash their Settlement Check after the 180-day check cashing period expires will be returned to Defendant by the Settlement Administrator. *Id.* at § 3.14.

### E. Service Award

The Agreement provides that, with Court approval, Plaintiff will receive a $7,000.00 Service Award in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks he took to do so. Ex. 1, at § 2.3.

6

### F. Settlement Claims Administration

The parties have retained Rust Consulting, an experienced wage and hour claims administrator, to serve as the Settlement Administrator. Ex. 1, Agreement, at § 1.19. The Settlement Administrator's fees of a maximum of $8,500.00 will be paid from the Gross Settlement Fund. *Id.* at § 1.13.

### G. Attorneys' Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiffs' Counsel will receive $300,000.00 (one-third of the $900,000.00 Gross Settlement Fund) as attorneys' fees plus reimbursement of $5,990.81 in reasonable out-of-pocket costs and expenses. Ex. 1, at § 2.2; Ex. 3. Fish Decl. ¶ 8.

## V. ARGUMENT

### A. The Court Should Approve the Settlement in One Step

In the Seventh Circuit, a one-step approval process is the norm in FLSA settlements that do not include Rule 23 classes. *See, e.g.*, *Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015). This is because collective actions under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), require workers to affirmatively opt-in to the litigation, unlike Rule 23 class actions, and thus do not implicate due process concerns. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena*, 2015 WL 2344949, at *1.

> **B. The Settlement Is a Fair and Reasonable Resolution of a Bona Fide Dispute and Should Be Approved**

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Courts find that this standard is satisfied in wage and hour settlements when they are reached as a result of arm's-length negotiations between counsel with the assistance of a neutral mediator. *See, e.g.*, *Beckman*, 293 F.R.D. at 474. While contested litigation demonstrates that the parties are settling a bona fide dispute, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), courts also readily approve wage and hour settlements reached pre-suit (like this one) because they provide compensation to settlement members without delay and enable the legal system to "focus resources elsewhere." *Beckman*, 293 F.R.D. at 474 (citing cases). Of course, the settlement must also be a *reasonable* compromise over disputed issues. *Lynn's Food Stores*, 679 F.2d at 1354

The settlement in this case easily surpasses the standard for approval. The settlement was the result of careful pre-suit investigation and substantial arm's-length negotiations. Ex. 2, Werman Decl. ¶ 32. Recognizing the uncertain legal and factual issues involved, the Parties only reached the settlement after private mediation before an experienced mediator. Ex. 2, Werman Decl. ¶ 32. The settlement amount of $900,000.00 provides significant compensation to Eligible

Settlement Class Members, without any claims-process that could depress participation. Ex. 1, Agreement, §§ 1.6, 2.4(C). The average gross settlement award will be approximately $6,040.27. Ex. 2, Werman Decl. ¶ 32. The gross settlement awards represent the recovery of approximately 74% of owed overtime wages that Eligible Settlement Class Members could obtain if they won this lawsuit on the merits. Ex. 2, Werman Decl. ¶ 32. This is an excellent result. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims, respectively, fair and reasonable in light of strength and variability of claims and risk on merits.); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average);The quality of the result is matched by a well-crafted release that is limited to federal and state overtime claims. Ex. 1, § 4.1. And if an Eligible Settlement Class Member is not satisfied with his or her settlement payment, he can decline to cash his or her payment and avoid releasing any claims. *Id.* at § 4.2.

The settlement is also an excellent result in light of the risks if Plaintiff proceeded with the litigation. While Defendant agrees for settlement purposes, only, that Plaintiff is similarly situated to its other Salaried Install Supervisors and Flex Installers in terms of compensation and job duties, if the litigation had continued it is possible Defendant could have successfully opposed collective action certification. *See, e.g.*, *Gromek v. Big Lots, Inc.*, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying collective certification of assistant store manager claims because "significant differences are present between the job duties of individual [assistant store

managers"). Apart from the difficulties in maintaining a collective action, Plaintiff also faced the risk that Defendant could succeed in proving that he and collective action members were properly classified as exempt from overtime coverage as executive employees. And litigating the collective action and exemption issues could have taken years to resolve, including possible appeals. Instead of this uncertainty and delay, the settlement provides significant compensation right now.

The proposed method of determining each Eligible Settlement Class Member's award is also reasonable. Plaintiffs' Counsel calculated owed overtime wages on a workweek basis based on time and payroll records for each Eligible Settlement Class Member. Ex. 1, Agreement, § 2.4. Because the time and payroll records are not challenged in this litigation, this method of calculating damages provides certainty that each settlement payment accurately reflects the overtime allegedly owed to that Eligible Settlement Class Member. And the settlement funds will be distributed pro rata based on these individualized overtime calculations. *Id.* at § 2.4(D). Courts readily approve this method of determining settlement awards. *See Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis").

The Court should also approve the proposed Settlement Notice. *See* Ex. 1, Agreement (Ex. B, Settlement Notice). The proposed Settlement Notice sufficiently informs Eligible Settlement Class Members of the general terms of the settlement, including how Eligible Settlement Class Members may participate, the settlement payment to which they are entitled, tax treatment of the award, the scope of the release, and the attorneys' fee award. *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016)

(approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distrib. Inc.*, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same).

### C. The Service Award to Plaintiff Should Be Approved as Fair and Reasonable

Courts award service payments to named plaintiffs to reward them for their time and effort spent recovering money on behalf of class or collective action members and the risks they incur by filing a lawsuit in their own name. *See, e.g., Espenscheid*, 688 F.3d at 876-77. In determining whether a service award is reasonable, courts consider: "(1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

Plaintiff's request for a $7,000 Service Award is more than reasonable given that his effort and actions resulted in the recovery of significant owed wages for all Eligible Settlement Class Members. Plaintiff made this recovery possible by assisting Plaintiffs' Counsel in investigating the claims in this case, preparing for and attending the mediation, and filing this lawsuit in his own name. Ex. 2, Werman Decl. ¶ 25. Courts in the Northern District of Illinois routinely award even larger service payments to named plaintiffs who perform similar actions to recover settlement funds on behalf of similarly situated employees in collective actions. *Furman*, 2017 WL 1730995, at *3 (approving $10,000 service award to named plaintiff in overtime collective action); *Briggs*, 2016 WL 7018566, at *2 (approving $12,500 service awards to named plaintiff in overtime collective action); *Castillo*, 2016 WL 7451626, at *2 (approving $10,000

11

service awards to named plaintiff in overtime collective action); *Koszyk*, 2016 WL 5109196, at *2 (same).

### D. One-Third of the Settlement Fund for Attorneys' Fees Plus Litigation Costs Should Be Approved as Fair and Reasonable

Courts in the Northern District of Illinois routinely approve one-third of the settlement fund as attorneys' fees in FLSA collective actions. *See, e.g., Castillo*, 2016 WL 7451626, at *3-4 (awarding one-third of a $3,000,000 settlement fund in FLSA overtime action); *Furman*, 2017 WL 1730995, at *3-4 (awarding one-third of $990,000 settlement fund in FLSA overtime action); *Briggs*, 2016 WL 7018566, at *3-4 (awarding one-third of $2,000,000 settlement fund in FLSA overtime action); *Koszyk*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case). Consistent with the Seventh Circuit's admonition to award attorneys' fees that approximate the market rate, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001), these courts explain that one-third of the settlement fund is consistent with market rates in the Northern District of Illinois charged by experienced plaintiffs' counsel in contingent-fee wage and hour class and collective actions. *Castillo*, 2016 WL 7451626, at *3-4; *Furman*, 2017 WL 1730995, at *3-4; *Briggs*, 2016 WL 7018566, at *3-4; *Koszyk*, 2016 WL 5109196, at *3-4.

Here, Plaintiffs' Counsel is highly experienced, Ex. 2, Werman Decl. ¶¶ 3-10; Ex. 3, Fish Decl. ¶¶ 3-7, and entered into a contingent fee agreement with Plaintiff that provides for a recovery of attorneys' fees equal to forty percent of the settlement fund. Ex. 2, Werman Decl. ¶ 27. This further reinforces the appropriateness of the one-third fee award, *In re Synthroid*, 264 F.3d at 718, 720, because the Plaintiff contracted for Plaintiffs' Counsel to be compensated *more* than the amount Plaintiffs' Counsel now seek. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)

("ratio that is relevant" in determining reasonable attorney's fees ". . . is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members*."); *Briggs v. PNC Financial Services Group, Inc*., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (awarding one-third of common fund and explaining courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.)"

Likewise, the excellent result Plaintiffs' Counsel achieved in this case supports the requested fee. Even after the payment of attorney's fees, a service payment, and all costs, the settlement payments to Eligible Settlement Class Members represents approximately 48% of their owed wages – an outstanding result. Ex. 2, Werman Decl. ¶ 29; *Dillworth*, 2010 WL 776933, at *8. And the early resolution Plaintiffs' Counsel obtained means Eligible Settlement Class Members were not required to wait for years of litigation to elapse before receiving their payments. *Beckman*, 293 F.R.D. at 474 (citing cases on the benefits of early resolution). Finally, Eligible Settlement Class Members obtain these substantial settlement payments in exchange for executing a limited release of their overtime claims. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (absence of overly broad release supports fee award).

While Plaintiffs' Counsel recognizes that this Court has discretion to award fees based on an hourly loadstar instead of as a percentage of the settlement fund,[2] the Court should follow the trend in the Seventh Circuit and use the percentage of the fund method. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell*, 2012 WL 1424417, at *2 (FLSA settlement). The percentage method is appropriate here because Plaintiffs' Counsel accomplished

---

[2] *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994).

what that method incentivizes: early resolution of the case without wasteful litigation to increase loadstar hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d at 979-80.[3]

Likewise, Plaintiffs' Counsel's request for reimbursement of $5,990.81 in litigation costs is reasonable. These litigation costs are limited to the mediator's fee, the filing fee, postage, and copying costs. Courts consistently approve reimbursement of such costs. *See, e.g., Castillo*, 2016 WL 7451626, at *3-4; *Furman*, 2017 WL 1730995, at *3-4**;** *Briggs*, 2016 WL 7018566, at *3-4; *Koszyk*, 2016 WL 5109196, at *3-4.

## VI. CONCLUSION

Because it is a fair and reasonable resolution of a bona fide dispute, the Court should approve this settlement and enter the Proposed Order submitted to the Court's proposed order email address.

Dated: May 14, 2018

Respectfully submitted,

s/Douglas M. Werman
One of Plaintiff's Attorneys

Douglas M. Werman - dwerman@flsalaw.com
Maureen A. Salas - msalas@flsalaw.com
Werman Salas P.C.
77 W. Washington Street, Suite 1402
Chicago, IL 60602
(312) 419-1008

David J. Fish – dfish@fishlawfirm.com
Kimberly Hilton – khilton@fishlawfirm.com
John Kunze – kunze@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 E 5th Ave., Suite 123
Naperville, IL 60563
(630) 355-7590

*Attorneys for Plaintiff and the Settlement Class*

---

[3] Nor is a cross-check of Plaintiffs' Counsel's loadstar hours required to confirm the reasonableness of the percentage of the fund award. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 850 ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."); *Castillo*, 2016 WL 7451626, at *3-4 (awarding percentage of the fund without performing a loadstar cross-check); *Furman*, 2017 WL 1730995, at *3-4 (same)**;** *Briggs*, 2016 WL 7018566, at *3-4 (same); *Koszyk*, 2016 WL 5109196, at *3-4 (same).

14